## THOMAS COHEA v. THE STATE.

1. ACCOMPLICE TESTIMONY — CORROBORATION.— It is not necessary that the other evidence shall corroborate that of the accomplice as to any particular statement made by him; but, whatever the amount of the corroborative evidence, it does not avail unless it tends to connect the defendant with the offense committed.

2. SAME — BURGLARY — CHARGE OF THE COURT.— Appellant was convicted of burglary on an indictment which charged him as an accomplice to the crime, alleging that, though not present at its commission, he advised and encouraged the principal offender before it was done, and furnished him aid in its perpetration. The chief evidence of the guilt of the principal offender and the complicity of the defendant on trial was the testimony of one B., who who was a *particeps criminis.* The defense asked the court to instruct the jury that "corroborating testimony tending to connect the principal with the offense will not be sufficient to convict the defendant as an accomplice." *Held,* that this was a correct principle of law and not a charge on the weight of the evidence; and,

being applicable to issues raised by the evidence, and not comprised in the main charge of the court, the trial court erred in refusing to give it to the jury.

3. FACT CASE.—See evidence *held* insufficient to corroborate such parts of an accomplice's testimony as tended to incriminate the defendant.

APPEAL from the District Court of Gonzales. Tried below before the Hon. EVERETT LEWIS.

The indictment was presented on June 22, 1881, and, after alleging that Cal Cohea, on April 23, 1881, burglariously entered the dwelling house of George W. Carraway in the night-time, without the consent of said owner and with the intent to steal, take and carry away a gun and a sack of flour, it proceeded to charge that Thomas Cohea, the appellant, did "on the said 23d day of April, A. D. 1881, and prior to the commission of the said offense of burglary as above charged against Cal Cohea, unlawfully, willfully, fraudulently and feloniously advise and encourage the said Cal Cohea to commit the said offense of burglary as above charged, he the said Thomas Cohea not being present at said burglary; and that he the said Thomas Cohea did then and there unlawfully, fraudulently and feloniously furnish a mare, prior to the commission of said burglary by the said Cal Cohea, for the purpose of assisting the said Cal Cohea in the execution of said burglary as charged herein; against," etc. The case came to trial in January, 1882, when appellant was found guilty by a jury, and his punishment assessed at a term of two years in the penitentiary.

G. W. Carraway, the first witness for the State, testified that in April, 1881, he lived on the Sandies creek in Gonzales county, and on the 23d of that month went to the town of Gonzales, and returned home the next day and found that during his absence his dwelling and smokehouse had been entered and sundry articles taken therefrom. His wife and the rest of his family, it seems,

were also absent from home when he was.  A gun worth ten dollars, a sack of flour worth two dollars and a half, and some other articles were missing from his dwelling; and ten sides of bacon worth twenty-four dollars from his smoke-house.  The dwelling and smoke-house were only latched, not locked, during the absence of the witness.  Witness found the flour, a box of sugar, a jug of molasses, and some pickles hidden in a pasture which belonged to George Cohea, and in a corner of which the defendant lived.  The bacon was found in the rear of James Trafton's .pasture, who lived about a mile and a half from witness, and about two miles from the defendant.  The premises were broken into on Saturday night, and, about nine o'clock the next Monday morning, Alfred Burton told witness about it.  Defendant and Cal Cohea had been arrested before Burton told witness about the matter.  Witness and Vosburg went to Leesville about midnight of the Sunday previous to the arrest, and witness there made complaint against Cal Cohea and Alfred Burton for breaking into his house and stealing his property.  Witness did not at that time charge Tom Cohea, the defendant, with the burglary or the theft.  Vosburg and witness got a warrant for the arrest of Cal Cohea, and a subpoena for Burton as a witness. After the arrest of the two Coheas, witness and the arresting party went with Burton in search of the stolen goods, and found them (except the gun) as already stated. After the breaking into the premises, witness did not see either Cal Cohea or Burton until after he got the legal process for them, but he could give no reason for his taking a subpoena for Burton instead of a warrant.  Witness denied that he had told William Gilbert that he, witness, knew that his house would be broken into and robbed, two weeks before it was done.  What he did tell Gilbert was to the effect that a man had told him, the witness, after the house was broken into, that he, the man, knew

that it was going to be done, two weeks before it was broken into. Burton told witness that Cal Cohea had carried off the gun, but it had never been found. Neither the defendant nor any one else had witness's consent to break into his house.

Alfred Burton, for the State, testified that about ten days before Carraway's house was broken into, Jim Trafton proposed to him to break into somebody's house and steal some bacon, and take it to town, sell it and get some money. Jim Trafton proposed that they should break into George Carraway's house, saying that he would not break into Henry Carraway's, nor steal from him. His plan was to hide the bacon on the side of the road leading to the town of Gonzales, put it in a wagon and pretend they were going to the river on a fishing excursion, and then take the bacon to Gonzales and sell it. He said they would get Henry Carraway's wagon to haul it off in. In the early part of the week in which George Carraway's house was broken into, the witness, defendant and Cal Cohea were working together in a field rented by defendant from old man Trafton, when the defendant proposed that they should find out whether George Carraway or somebody else would be from home the next Saturday night, and they would go and get some bacon and hide it behind Jim Trafton's field, and would the same day borrow Henry Carraway's wagon, pretend they were going fishing, go by and get the bacon, carry it to town and sell it. After that, Mrs. Elijah Trafton told witness, defendant and Cal Cohea that George Carraway was going to town on Saturday night. Cal Cohea, witness and the defendant then agreed to break George Carraway's house. Cal Cohea and witness were to do the breaking and stealing, and Tom Cohea, the defendant, was to furnish a mare and get a third of the proceeds. On Saturday evening witness went to defendant's house, lay down about sunset and went to sleep. Cal Cohea was to wake wit-

ness up.    The defendant had told witness during that day
to come to his house that night and lie down and go to
sleep, as he didn't want his wife to know anything about
the raid.    Witness rode the defendant's mare, and Cal
Cohea rode his own horse.    They started about eight
o'clock, and on their way Cal Cohea proposed that if they
should find sixty dollars in money they would steal noth-.
ing else.    They found Carraway's doors all latched, and
first opened and went through the dwelling, broke open
trunks, and carried out to the gallery such things as they
wanted.    Then they went into the smoke-house and each
took five sides of bacon, and tied three of them on one
side and two on the other of their animals, using Carra-
way's clothes-line for the purpose.    They tied the sides
across their saddles and rode behind the saddles, and thus
took them behind Jim Trafton's field, and piled them up
outside the fence, and covered them with bark and brush.
Defendant had told them to carry the bacon there.    After
hiding the bacon they went down on Cottonwood creek
to Mr. Kinney's, to steal some money from him, but, find-
ing him at home, they desisted.    From Kinney's they came
back about a quarter of a mile to another house, but
found its occupant also at home, and again desisted.
From there they returned to George Carraway's and took
the things they had left there on the gallery, consisting
of a sack of flour, a box of sugar, a gun, a jar of pickles,
and other articles.    These things they took and put inside
of George Cohea's pasture as defendant had told them to
do, at a place about two hundred yards from the defend-
ant's house.    Defendant and his wife were asleep when
witness and Cal Cohea started from defendant's early in
the night, and were asleep when they got back there a
little before day.    After putting their horses in the pas-
ture they lay down and slept until day and then got up.
After breakfast they went by Elijah Trafton's place,
where witness was staying, and there he changed his

clothes, and then they went down to Liberty church, to attend divine service. Witness could not say whether he and Cal Cohea got their clothes greased by the bacon, or not, but .they wiped their saddles with their saddle-blankets. Some grease, however, remained on the saddle-skirts and sweat leathers, which they could not wipe off. .Witness caught the defendant's mare after the latter went to bed. The defendant and Cal Cohea were to carry the bacon to town. Witness acknowledged that he swore at the examining court that Jim Trafton was to carry the bacon to town. Cal Cohea and witness did not know that George Carraway was away from home until they got to his place; but Mrs. E. Trafton had told the witness that Carraway was going to town. At the examining trial witness swore that Mrs. Trafton told him that Carraway was away from home. In the written testimony at the examining trial it appears that this witness there swore that he "knew that G. W. Carraway was absent from home" before he started on the raid.

G. W. Cohea, for the State, testified that the defendant was his brother and lived in the corner of his, witness's, pasture. On the Sunday morning after Carraway's premises were broken into, witness passed the defendant's house, and about a hundred and fifty yards therefrom he saw a sack of flour stuck in a crack of the pasture fence, and a gallon jug and a box near the flour. As witness passed back, the defendant was standing in his door and witness asked him about the things. Defendant replied that he knew nothing about them. Alfred Burton was then at the defendant's, but witness did not see Cal Cohea there.

W. Vosburg, for the State, testified that the morning after he and George Carraway got the warrant for Cal Cohea and the subpœna for Alfred Burton, witness got a crowd of men and took charge of the defendant and Cal Cohea, whom they found at work in a field which be-

longed to old man Trafton. Directly afterwards witness found Alfred Burton outside of the field, and took charge of him as a witness. Burton proposed that if witness would go with him he would show where the stolen property was, and stated that he and Cal Cohea robbed the house. A few minutes afterwards, and after some further conversation, Burton said that the defendant furnished his mare for him, Burton, to ride, and was to have a third of what was got. Witness and his crowd were taken by Burton to where the things were concealed in George Cohea's pasture.

Three other witnesses testified for the State in corroboration of so much of Burton's testimony as related to the greasy condition of the saddles ridden by him and Cal Cohea on their raid. Nothing in their testimony had any relation to the inculpation of the defendant.

J. J. Carpenter, for the defense, testified that he was one of the party who arrested the Coheas. "When W. Vosburg," said the witness, "came back to the party after interviewing Alfred Burton, he stated to us he had found out who did the robbing of Carraway's house. Some one asked who, and he said Burton told him that himself, Burton and Cal Cohea did it. And about fifteen minutes afterwards, and after a second conversation between Vosburg and Burton, Vosburg said that Burton in the second conversation implicated defendant. This was Monday morning, about nine or ten o'clock in the morning."

Wm. Cohea, testifying for the defense, made the same statement as the preceding witness Carpenter.

W. Gilbert, for the defense, testified that in August, 1881, George Carraway told him that he, Carraway, knew, two weeks before his house was broken, that it was going to be broken.

James Trafton, for the defense, testified that at no time did he ever propose to Alfred Burton to break anybody's house or get anybody's bacon. A week or ten

days before the robbery of Carraway's house, Burton came and proposed to witness to get some bacon, and mentioned George Carraway's as a good place to get it. Witness told Vosburg and Carraway of this on Sunday evening succeeding the night the latter's house was robbed, but witness made no mention of the defendant, and never said that defendant had anything to·do with it. Burton said he wanted to steal the bacon to pay the defendant a debt of seven dollars and a half. During the conversation Burton did the talking, and witness said but little.

It is disclosed in the evidence that there had already been a trial and acquittal of Cal Cohea upon an indictment which charged him with the burglary.

On the subject of accomplice testimony the charge of the court was as follows:

" The witness A. Burton has testified for the State in this cause, and his testimony is before the jury for their consideration, and to be weighed by them. The jury are instructed that, according to his said testimony, he was guilty as a principal offender, and the jury cannot convict the defendant on his testimony alone, unless corroborated by other evidence tending to connect the defendant with the offense committed. In other words, there should be other evidence tending to show, not only that the burglary was committed as charged, but connecting Thomas Cohea with it. . . With the restrictions hereinbefore made as to the testimony of an accomplice, the law prescribes no rule for the kind or amount of testimony, other than it must be sufficient to fully satisfy the jury of the existence of every fact necessary to constitute the guilt of the accused, beyond a reasonable doubt."

*Fly & Davidson,* for the appellant.

*H. Chilton,* Assistant Attorney General, for the State.

HURT, J.   This appellant was convicted as an accomplice to burglary with intent to steal.  The witness Burton was one of the actual participators in the burglary and theft.   This witness swears to facts amply sufficient to convict the appellant, but under the Code he is an accomplice and must be corroborated.  We have given the statement of facts the closest examination and find no fact or circumstance, sworn to by any other witness, tending to connect the defendant with the offense.   (The Reporters will insert the evidence.)

While it is true that a great many facts sworn to by the accomplice were corroborated by the evidence of the other witnesses, there is not the slightest tendency in these facts to *connect the defendant with the crime.*  As we have before held, the evidence of the other witnesses need not corroborate some particular fact testified to by the accomplice, but it must tend to establish the *guilt* of the defendant.   The accomplice may swear to any number of facts, and other witnesses may corroborate him in regard to these facts, and yet this character of corroboration would not be such as is required by our Code.

The defendant was charged as an accomplice to one Cal Cohea.   To convict the defendant, it was necessary to establish the guilt of the principal.   To effect this, there was quite an array of facts adduced on the trial.

The counsel for defendant requested the trial judge to charge the jury as follows: "Corroborating testimony, tending to connect the principal, Cal Cohea, with the offense, will not be sufficient to convict the defendant as an accomplice.   The corroboration must point to the defendant and connect him directly with the alleged offense."

This charge was refused because, as the judge states, "Objectionable as a charge on the weight of evidence, and I have charged on the subject." · We do not find in the charge of the court the subject-matter contained in the first sentence of the requested charge alluded to at all.

Evidently it was not upon the weight of evidence. It enunciated a correct principle of law which should have been applied in this case, in view of the nature of the offense charged and the proof required and introduced to sustain the charge? It was incumbent upon the State to show the guilt of the principal, Cal Cohea. Evidence which was competent for this purpose may not have been admissible against the defendant: The proof of the guilt of the principal, though absolutely necessary, did not tend to show the guilt of defendant. Therefore, corroboration of the witness Burton as to the guilt of the principal was not a corroboration which tended to connect the defendant with the commission of the offense.

In this character of prosecutions, the guilt of the principal and that of the accomplice (the defendant) were in issue. To support the issue of the guilt of the principal, evidence is frequently received which would not tend to criminate the accomplice, but clearly competent to establish the guilt of the principal; hence the necessity of the trial judge informing the jury of the purposes of the evidence. 10 Texas Ct. App. 131.

We are of the opinion that the witness Burton was not corroborated, and that the court erred in refusing the charge asked by the defendant's counsel; and that therefore the judgment should be reversed. The judgment is reversed and the cause remanded.

*Reversed and remanded.*